IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TREVOR RYAN,

                                 OPINION AND ORDER

               Petitioner,

                              14-cv-430-bbc

        v.                        08-cr-164-bbc

UNITED STATES OF AMERICA,

               Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Petitioner Trevor Ryan has moved for post conviction relief under 28 U.S.C. § 2255, contending that he had been denied his right to the effective assistance of counsel in connection with his arrest and prosecution for importing marijuana into Wisconsin from California. While the motion was being briefed and after the government had responded to petitioner's motion, he was granted leave to withdraw most of his claims. He has continued to pursue two claims of ineffectiveness: (1) that his counsel gave him constitutionally ineffective advice on the night he was arrested for flying a large quantity of marijuana to Wisconsin from California and (2) that counsel failed to move to suppress the evidence obtained in connection with that arrest.

      Petitioner's withdrawal of all but two of his claims leaves him with no basis for relief, for two reasons. First, the allegedly ineffective advice given him when he was arrested cannot support a claim that counsel was constitutionally ineffective because the constitutional right

1

to counsel does not attach until the initiation of adversarial criminal proceedings.  Kirby v. Illinois, 406 U.S. 682, 689 (1972).  When petitioner's counsel advised him to cooperate with law enforcement, no adversarial criminal proceedings had been initiated.

Second, petitioner cannot show that his counsel was ineffective in not moving to suppress the marijuana seized from his plane unless he can show that the investigatory stop and subsequent search of his plane were illegal.  He has not made that showing or argued that he needs to have an evidentiary hearing to adduce the evidence to support his claim. The record evidence is more than sufficient to show that his counsel would have had no ground on which to move to suppress the marijuana seized from the plane.

Petitioner has also moved for appointment of counsel.  Dkt. #5.  That motion will be denied. His inability to state a claim is not the result of any failure on his part to explain his arguments cogently or to cite appropriate legal support.


RECORD FACTS

On October 8, 2008, Special Agent Kenneth Martinson of Immigration and Customs Enforcement learned that a 1962 Piper Aztec PA-23, registration number N5071Y, registered to petitioner and piloted by him, was flying west from Madison, Wisconsin.  The agent knew that a January 2008 search of petitioner's residence had disclosed a commercial-scale marijuana growing operation in petitioner's residence in Grenada Hills, California. Martinson was aware that petitioner owned property in Ukiah, California, an area that was

a known area for marijuana cultivation, and that he was affiliated with a Los Angeles area medical marijuana dispensary.

Ten days later, on October 18, 2008, Agent Martinson learned that petitioner had advised the Federal Aviation Administration that he would be flying from Ukiah to the Dane County Regional Airport in Madison, Wisconsin; that he had left the Ukiah area about 12:00 p.m., CST; and he had an expected arrival time in Madison of 8:30 p.m., CST. Martinson passed on the information to Richard Hanson, an ICE agent in Wisconsin, and arranged for live radar tracking of the aircraft.

At about 7:00 p.m. CST, three ICE agents, including Hanson, met Drug Enforcement Administration Special Agent Jerry Becka at Wisconsin Aviation, the fixed base operator serving the Dane County airport. At approximately 8:45 p.m., the agents were informed that the aircraft they expected to meet had changed course and was landing at the Iowa County airport in Mineral Point, Wisconsin. Agent Becka passed on the information to the Iowa County Sheriff's Department and started for the Iowa County airport. Before he could get there, Iowa County and Mineral Point officers arrived at the airport, where they observed only one plane. The officers heard the plane rev its engines. Thinking that it might be about to take off, they boxed it in with their vehicles. According to petitioner's summary of the situation, which I accept as true for the purpose of deciding this motion, law enforcement officers approached him at gun point as soon as he shut down his engines and stepped out of the plane; they then told him to lie down on the tarmac, searched him, seized his wallet and three cell phones and locked him in a squad car. They also brought out a narcotic

detection canine, which alerted to the presence of narcotics on the aircraft.

Agents Becka and Hanson arrived at the airport about 9:45 p.m.  Becka told petitioner he would be detained and that they believed the plane contained contraband. After the agents administered Miranda warnings to him, petitioner said that he wanted to speak with his attorney.  Agent Becka placed the call to petitioner's attorney, William Kroger, and told him that petitioner was being detained on the possibility that his plane contained marijuana.  Becka turned the phone over to petitioner, so he could talk with Kroger, who advised him to cooperate.  Before ending the call, Becka talked again to Kroger; Kroger told him that petitioner would cooperate.  In the end, however, petitioner chose not to cooperate, other than to admit to Becka that the plane contained marijuana.  He refused to answer any other questions.  Becka then called Kroger and told him of petitioner's decision.

At about 10:20 p.m., an assistant United States Attorney told Agent Hanson that the plane could be treated like an automobile and searched without a warrant. The search revealed 157.45 pounds of marijuana.


OPINION

The record evidence does not support petitioner's claim that the airport search and seizure violated his Fourth Amendment rights and he has not suggested that he has any other evidence to show that law enforcement lacked reasonable suspicion to detain him temporarily or that they lacked probable cause to search his plane.

4

"Reasonable suspicion" justifying a stop means only "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Johnson, 383 F.3d 538, 542 (7th Cir. 2004). "'[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" Id. at 542 (quoting United States v. Arvizu, 534 U.S. 266, 274 (2002). In petitioner's case, the officers had ample suspicion: they had been told that petitioner was a known marijuana grower and had left California with plans to fly to Madison, Wisconsin, a college town likely to contain prospective customers; he was not landing in Madison, but at the Iowa County airport, where he would be under far less scrutiny than at the much larger Dane County airport; he was known to possess firearms and he had taken what seemed to be a defensive maneuver initiated when he spotted the official vehicles.

The Mineral Point police officers and sheriff's deputy were justified in blocking petitioner's plane with their vehicles when they thought it was about to take off, in holding petitioner at gunpoint in light of the information that he was known to possess guns and in placing him in a squad car while they waited for the federal agents. Intrusive as their actions were, they did not exceed the bounds of a constitutionally permissible investigatory stop in a situation in which it appeared "necessary "to 'neutralize' potentially dangerous suspects during an investigatory detention." United States v. Tilmon, 19 F.3d 1221, 1224 (7th Cir. 1994) (finding it within the bounds of investigatory stop for officers to block Tilmon's car after observing it shortly after a bank robbery, to approach him at gunpoint, order him out

of car with hands up and force him to lie on ground until he could be handcuffed and placed in squad car).  See also United States v. Smith, 697 F.3d 625, 632-33 (7th Cir. 2012) (officers conducting investigatory stop may approach suspect with guns drawn and handcuff him without transforming stop into arrest).  In petitioner's case, the officers had been told that petitioner owned guns, so it was reasonable for them to protect against the chance that he would use one if he was not detained during the search.

The local law enforcement officers who detained petitioner were entitled to rely on the information given them from the federal agents.  Officers in different jurisdictions may rely on information from other officers so long as the officer relaying the information had reasonable suspicion for a stop.  United States v. Nafziger, 974 F.2d 906, 911 (7th Cir. 1992).  See also United States v. Parra, 402 F.3d 752 (7th Cir. 2005) (applying "collective knowledge doctrine" after reviewing what knowledge could be imputed to officers at scene and whether knowledge was sufficient to allow officers to form reasonable belief that defendant was engaged in criminal activity).

In his reply brief, petitioner lists reasons why he believes that the officers overstepped the bounds in stopping him at gunpoint and detaining him in a squad car for a brief period, including his contention that they were not telling the truth about what they called his evasive actions on the runway.  Petitioner says now that he had no intent to take evasive action, that he was simply taxiing over to the airport gas pump, that what the officers said were tire marks showing evasive action could not have been made by his plane and that the officers should have realized that he would be in need of gas at that point in his trip.  However, the issue is

not whether the actions the officers observed were actually criminal in nature or whether officers more experienced in flying would have known that petitioner was not taking evasive actions; it is how reasonable officers would have assessed the actions they observed.  Even if petitioner's explanation for his actions is true, the officers' assessment was reasonable under the circumstances.  They did not have the luxury of undertaking a full investigation of the facts of petitioner's arrival at the Iowa County airport, but had to make a quick decision based on their observation of the situation and the information they possessed when they arrived.  This is not uncommon in situations like petitioner's; the process of making an investigatory stop "does not deal with hard certainties, but with probabilities."  United States v. Cortez, 449 U.S. 411, 417-18 (1981).   Given the possibility that petitioner could take off in his plane if not detained long enough to permit further investigation and the additional possibility that he was armed, it was not unreasonable for the officers to hold him at gun point and put him into a squad car while they continued the investigation.

The officers had sufficient probable cause to search the plane.  They had the information from the ICE agents, petitioner's post arrest admission that the plane contained marijuana and the additional evidence supplied by the drug sniffing canine.  This was more than enough to establish the probability of criminal activity, which is all that is required.  Illinois v. Gates, 462 U.S. 213, 235 (1983) ("Probable cause" requires "only a probability, and not a prima facie showing, of criminal activity.")

In short, petitioner has not shown that his brief detention at the Iowa County airport was illegal or that law enforcement officers lacked probable cause to search his airplane.  It

follows that he has no ground on which to contend that his retained counsel, William Kroger, was constitutionally ineffective in failing to challenge the search and the seizure. United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005) ("When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious.")  Moreover, petitioner has not shown that Kroger can be held liable under the Sixth Amendment for advising him to cooperate immediately with law enforcement, nor could he, because Kroger gave the advice before any adversarial proceedings had been initiated. Kirby, 406 U.S. at 689; United States v. Jackson, 886 F.2d 838, 843 (7th Cir. 1989).  Accordingly, petitioner's motion for post conviction relief must be denied.

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when entering a final order adverse to a defendant. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).  Defendant has not made a substantial showing of a denial of a constitutional right so no certificate will issue.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a

close one.  Petitioner is free to seek a certificate of appealability from the court of appeals under Fed. R. App. P. 22, but that court will not consider his request unless he first files a notice of appeal in this court and pays the filing fee for the appeal or obtains leave to proceed in forma pauperis.

ORDER

IT IS ORDERED that petitioner Trevor Ryan's motion for post conviction relief under 28 U.S.C. § 2255, dkt. #1, is DENIED, as is his motion for appointment of counsel, dkt. #5. Further, it is ordered that no certificate of appealability shall issue. Defendant may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered this 19th day of September, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge